Good morning. May it please the Court. My name is Aki Levin and I represent the appellant termberry pavilion partners. I would like to reserve three minutes for rebuttal. We are here before the Court to ask it to reverse the summary judgment entered below because the District Court made an error of law. It treated the specific release for the homeowners construction defect claims made in the one termberry case as a general release, expanding it to claims made in an unrelated separate lawsuit that did not involve the homeowners or the claims made by them. The release at issue here declares a specific and unambiguous intent to limit it to the claims concerning the defects and defects of deficiencies alleged in the litigation. Well, let me ask you this. This is the third of a series of litigation over the same building, right? They're these luxury condos. And we've got some players that are involved in all of them. We've got termberry, we've got Malco, we've got Dean, right? Correct. And the first one, I think, went to a trial, but then they settled when they were on appeal. Is that right? Yes, ma'am. And then the second one, they settled for an amount. Then the third one. Now, the language is very broad in the settlement. I mean, why would you, if you wanted to carve something out, why wouldn't you carve it out? Why doesn't this broad language just cover everything? I mean, why would you settle something with such broad language just so that you could continue on with the litigation regarding this building? Your Honor, let's look at that language. This is what the parties said when they expressed their intent as to what they were settling. And this appears on page 75 of the excerpt of records. And we also cite this language in our opening brief on page 11. This is what the parties said. It is the express intention of the settling parties that the release set forth below releases and resolves all past, present, and future claims known relative to defects and deficiencies alleged in this litigation, not the separate one in which involved the contractors, this litigation. Now, litigation is a defined term. And that appears on page 74 of the excerpt of records. You want us to read this as if it were an insurance policy, defined terms, right? Well, Your Honor, yeah, it is pretty analogous to that, because if the parties want to release each other for something, then they should make that clear. And they made that clear. Picking up on what Judge Callahan said a moment ago, there was one claim, and I can't remember exactly who it was, that was, ah, here, Southland Reserve claims. Those were specifically excised from this release. Why didn't Turnberry excise the Malko claims? Well, Your Honor, they did. They said they are — this is — Not by name, right? But let me ask you a follow-up question that you might consider. Were the Southland Reserve claims claims against specific defects that had obtained in the finished product? Your Honor, this is not in the briefs and it's not in the record as to what this — this Southland claim pertained to. But it is — it is important to look at the language of this release. They are saying we're settling claims concerning the defects of the homeowners in this lawsuit, not the other lawsuit, this lawsuit. These cases were not — they were vastly different in nature. And these are not my words. These are the words of M.J. Dean. Well, the whole problem was this concrete work. This Dean was the whole problem here. And it seems that it's pretty standard in — when you do construction work. You know, people know that if there's a defect, everyone's going to get sued, including a person who only put one bolt in. And so it's not — you know, I mean, it's — I think it would almost be malpractice not to get these kinds of indemnification in that sort of thing. So it's not like this is an unusual construction defect type of situation. So everyone knows that that indemnification is there. And to me, it looks like they've got this global settlement. I mean, I don't know how much money you're trying to get exactly. Your Honor, I — let me explain. I mean, why would you want to keep this going when you have a — when you use that kind of broad language? Your Honor, the language is not broad.     It's defined to claim the property. It's defined to claim the property. So the complaint is about what the homeowner claims with respect to the — The homeowner claims with respect to the project and future. And present and future. Concerning defects and deficiencies claimed by the homeowners. I would like to explain the difference between the case — Does it say by the homeowners, or it says this litigation? This litigation. And this is the third of — this is the trilogy of litigation over the luxury suites, right? Yes, Your Honor. But it is — the litigation is defined to include the plaintiff's claims in their complaint, in the third-party complaint. And the claim sets forth in the final and supplemental reports of the plaintiff's experts. Let's not forget, we're settling the plaintiff homeowner's defect claims. I would like to explain the difference between these litigations. In the homeowners' case, that involved property damage. The homeowner said, you didn't build this correctly. This is wrong. There's something wrong with my units. In the — in the Malco case, that was a — that's between two contractors. And Malco said to Turnberry, you know what? You didn't pay me. I did all this work, and you didn't properly schedule the trades. And I'm out of pocket here. You got to pay me now. And that has nothing to do with defects. Malco wasn't — that contractor wasn't suing for property damage. It was suing for delays. The homeowners didn't care about what Malco suffered. They cared about the end product. Was there any claim in the complaint by the homeowners that the building had been delayed in delivery? No, Your Honor. Nothing. And the same way that the Turnberry third-party complaint did not relate, they didn't even mention about Malco. And how could it? The Malco judgment was not rendered until a year and a half after Turnberry filed its third-party complaint. So the findings — I guess at the bottom line, if it were this clear, the other side didn't think it was quite as clear as you thought it was. So that — so I guess that's why we're talking about it. But let's also look at how the circumstances, how the settlement came about. Well, you have a choice. Do you want to reserve at this point for rebuttal, or do you want to use your time right now? So it's — I thought — You have two minutes and 22 seconds left. I appreciate you telling me that, and I will reserve the rest of my time. Okay. Thanks. Thank you. Good morning, Your Honors. May it please the Court. My name is Megan Dorsey, and I represent M.J. Dean. As the Court — You've seen our focus at this point. Yes, I have. So can you tell me, counsel, where there is one word in either the complaint, the third-party complaint, the Section 40 notices, the fourth-party complaint, or the preliminary — because there wasn't any final report — of Christopher Allen, the only plaintiff's expert whose report finds its way through you into the record? Is the name Malco and Malco's claims even mentioned? No, Your Honor. Specifically, it's not mentioned. But what is mentioned — Malco and Malco are part of this litigation, which is a defined term, right? Correct. Right. So Malco is included in this because Malco was also named, as M.J. Dean, as a third-party defendant. By the homeowners for finished defects. By Turnberry. The homeowners are Turnberry. And Turnberry for indemnity, contribution, apportionment, declaratory relief. If there were defects in the property for which we are held liable to the condo owners, we want to get them back from Dean and Malco. Correct. But you need to look. There was no third-party complaint by Turnberry against Dean. True? Not true. The homeowners?   The homeowners. The homeowners. What recovery other than indemnity, contribution, apportionment did Turnberry seek from Dean? They sought breach of contract claims. They sought negligent errors and omissions. Where in the complaint? Can you give me the paragraphs? Yes, I can, Your Honor. It's paragraph 52 and 53 of the — I'm stepping away from the microphone. I apologize. I have those. And 52 says, if the property is defectively designed. Now, that the property was defectively designed. True. If the property is defectively designed and we, as developers, get hit for it, we want to get indemnity and contribution from Dean because it was his fault in causing the defects. Not a word about delay. Not a word about delay in the broad pleading per se, Your Honor. But the evidence that we did submit in support of our motion for summary judgment informs that the issue of delay and the sequencing of a construction job such as this, and it's a 30-some-odd-story tower, always is going to involve sequencing issues. Those sequencing and delay issues cause defects. Where is the expert testimony, it has to be expert, saying. Go ahead. Sorry, Your Honor. Do you want to interrupt me or shall I interrupt you? I'm sorry, Your Honor. My apologies. Where is the evidence that a delay caused by Dean in Malko's work eventuated in a final defective product of the building? That evidence comes from multiple sources. And in the record, it's found. In the record. In the record, it is found in the information that it was submitted as part of SCR 103 through 221. You want me to read from 103 to 221? No, Your Honor. There's not a specific line that I can point you to. This was a massive amount of litigation that began. Pardon me. Stop for a second. Tell me how delay in pouring a concrete floor, delay in pouring a concrete floor, resulted in defects in the concrete floor. The delay in pouring the concrete floor impacted Malko's ability to do its work because it's a sequenced project. All right. And when Malko was delayed in doing its work, when he got around to doing it, when he finally got to use the crane to go to the top floor and to do the work, where is the evidence that the delay caused Malko to do uneven floors or bad work? Well, they were doing the interior drywall and the exterior drywall. Where is the evidence that says, account we got there late, our work was bad? Did Malko say that? Yes, Malko said that in the trial that M.J. Dean wasn't in, and that resulted in a judgment. But hold it. The judgment in that first case, what Malko said is not in the complaint, in the third-party complaint, in the fourth-party complaint, or in the report of Mr. whatever his name was, the first guy. So tell me again, because I used to do a little bit of construction work, how does delay cause defect? The delay caused the defect in that Malko claimed that when they got to the floor and got to the concrete floor that M.J. Dean had poured, it was uneven and needed to be buffed out to be level so that they could put their work in correctly. Which is what they did. But that delayed the project, which delayed their work, which resulted in the mechanics leaving. I agree. It delayed the work. The beefsteak came late from the kitchen does not tell me the beefsteak was bad. I agree with the court's analogy. Tell me where the evidence is from some expert that says because Malko had to repair the floor and that delayed Malko's other work, the repair of the floor was necessarily bad. I think you're missing the point, Your Honor. The point is that the sequencing of a construction job is going to impact them. You're talking about abstractions. Tell me evidence where somebody says that account delay defects were produced. That would be in the testimony of Dean Valos, who was an expert that was submitted in support for the. Dean Valos was not. He was a lawyer, wasn't he? No, Your Honor. He was an expert. Expert engineer for. Yes. And he said that because Malco was delayed account, Dean, the work that Malco did that was turned over to Turnberry condo owners was defective. Is that your position? Not exactly, Your Honor. Well, I don't think so. So tell me. I'll draw a line through Dean. Give me another one. Well, Dean Valos did talk about how the sequencing impacts the creation of the defects. So that's why it's important. I'm not so concerned. There's no question that the sequencing hurt Malco. There's no question because Turnberry paid him $2 million, right, after the trial. No question about that. My question is how did the sequencing affect the condo owners? The condo owners get a finished product. It doesn't make any difference to them how long it took to cook the beefsteak if the beefsteak was good. Your Honor, I disagree in that where we get to that is that the language of the agreement talked about what was being settled. And it was any and everything. And it was known, alleged, or asserted claims. And the Malco delay claim was asserted. It wasn't known or unknown, first of all. It wasn't a general release. Right? Your Honor, I think. It's only known. You don't see the word unknown at all. It says known, alleged, or asserted in the litigation. In the litigation. Correct. And the Malco judgment was asserted in the litigation. Tell me, where in the litigation, complaint, third-party complaint, Chapter 40 notices, fourth-party complaint, declaration of the single expert, and I'm talking about since you have the burden of proof on the affirmative defense, where in any of those documents is there any mention of a delay or loss of production claim of Malco? That's in the judgment. There was a separate MSJ on it. The parties, as Justice Callahan referred to, it was asserted in the litigation regarding the Malco delay claims. The other litigation. No, it was asserted in this litigation. There was an MSJ brought. Give me an ER or SER cite as to a mention of the Malco delay claims as being a part of this litigation in any of the documents which are set forth in the release, which I'll say again, plaintiff's complaint, Chapter 40 notice to Builder. You wouldn't expect that. Defendant's third-party complaint, fourth-party complaint, and any other claims are set forth in the final and supplemental report. There isn't any. There's only a preliminary report of Christopher Allen. The rest of them aren't. You don't have any of them in. So tell me, where can I look for that? The Malco judgment is in the record at ER 36 to ER 48. Malco, ER 36 to 48. Correct. And it is also in the record at SER 51 to 79. Now, where, why is the Malco judgment a part of the plaintiff's complaint, the Chapter 40 notice, the defendant's third-party complaint, the fourth-party complaint, or Mr. Christopher Allen's report? Your Honor, it's no. No, but it is part of the claims that were included in the litigation because it is any and all claims, liability, damages, et cetera, whatsoever of every kind and nature whatsoever known, alleged, or asserted in the litigation. That's the definition of the claim. But, you see, litigation is not only capitalized, which makes it a defined term, but it's both things.  What do you mean as a claim? Asserted in the litigation? No, the definition of claim is also a defined term. And that's where the Federal District Court went when they found out that the ---- But it's got to be a claim in the litigation, doesn't it? And the claim in the litigation was Malco ---- I'm sorry. I took your result. Okay. Well, I'm going to give you, the two of you have had, you've had your discussion. Just at this point, I want you to give me your best argument, summarized, what you feel supports the fact that this particular claim was included in the litigation. I will, Your Honor. And that specifically is, as you pointed out in the earlier questioning, this is the third lawsuit. Dean participated as a precipient witness in deposition and at the trial of the Malco action. The Malco action was injected into the homeowners action when they sought by a motion for summary judgment to have those findings, in fact, ruled summarily as against Dean, Omega, and all other third-party defendants. That is how that action became known, alleged, or asserted in this litigation, which was the homeowners action. And that is all is what was released. So, yes, this is the third go-around. We think we have fought our piece. And another point I would like to point out, just very briefly, is that not only were the Southland claims, which was another general third-party defendant that was involved in the case reserved, also were all of Turnberry Pavilion's additional insured obligations. They could have, if you use the Court's term, excised this issue of the Malco claim as against M.J. Dean when that settlement, which was discussed at length between the parties and the Court trying to come to an agreement on these terms, everyone knew about it. We'd received a formal demand while the one Turnberry action was still ongoing. And when we reached our settlement, it wasn't excised out of it. So we think we have fought our piece once and for all for a very handsome sum and that the district court was proper when it found that this was a clear and unambiguous determination that had been made regarding the settlement agreement and that we had fought our piece. So we think that the summary judgment should be affirmed on this appeal. Thank you. All right. All right. I'm going to give you an extra minute because we took over longer. And if we have any additional questions, then we'll go into that, okay? What about that? The argument of your learned friend that the depositions were taken in this third action and brought up the Malco claims. If they were mentioned before the Roundhouse global settlement, isn't that pretty good evidence that they were involved in the settlement? No, Your Honor, because all the evidence that they put before the Court below was irrelevant. It was excluded from the term litigation as this was defined. Litigation did not include deposition testimony. It did not include defense expert reports or what defense experts may have said. Well, if they're irrelevant, how do they, but they can't be irrelevant to what's known, right? I mean, they might be to resolving the specific question in that. But does that – aren't they relevant to whether it was known? Yes, but that only goes to the claims definition. Was it a claim? Was it a known claim? It may have been known, but that doesn't end the matter. We have to keep reading. When we even look – when we look at the general release, we have to keep reading. Was it a claim asserted in the litigation? No, Your Honor. It was not a claim asserted in the litigation. Litigation is not defined to include the preliminary – even the preliminary expert report that they put before the Court. It was excluded from it. It didn't include testimony. It didn't include what defense experts said in testimony. It didn't include what – discovery whatsoever. This is a defined term. The express intention of the settling parties was in the release. It is clear they were settling defects and deficiencies in death litigation, not in the Malco case. The damages were paid to the homeowners, not to Malco. And Turnberry paid Malco's damages in the other case completely. Do you agree that there's something in the record that shows that the delay caused Malco, in turn caused actionable defects in the final product? Your Honor, I believe that what we have shown in terms – because, remember, Turnberry put the Malco complaint and the Turnberry homeowners complaint before the Court, not M.G. Dean, and we pointed out that there is nothing in those pleadings. And that's what we're concerned with here. I think he asked you in the record. Is there anything in the record about that? He didn't say just the pleadings. I mean, the record is a broader term. Understood. No, I don't believe there is. There is. And if it were in the record, it was up to M.G. Dean to put it there and to show it. And it did not do that. And so what happened is the Court made a mistake below because it ignored the express intention of the parties. It ignored the terms that – Were the attorneys on the settlement? Was it either of you? Were either of you involved in the settlement? No, Your Honor. We were – we came in only in February 2008 after M.G. Dean disqualified. Why were they disqualified? Because M.G. Dean, the – Had used them before? There was an attorney who had switched firms from M.G. Dean's firm to another firm. And M.G. Dean argued with success that she knew too much about the litigation and should not – and that the firm should be disqualified. Thank you. Thank you, Your Honor. Thank you. This matter stands submitted. Thank you both for your argument.
judges: Archer, Callahan, Bea